**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

REUBEN McDOWELL,

                              Plaintiff,

        v.                                                              No. 07-CV-500
                                                                        (DRH)

JOSEPH BEAROR[1], State Police Investigator;
JOE GRECO, State Parole Officer; JOHN DOE,
State Police Officer;[2] and ROBERT LAHART,
Senior Parole Officer,

                              Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

REUBEN McDOWELL
Plaintiff Pro Se
6309 Regency Park North Apartments
Queensbury, New York 12804[3]

HON. ANDREW M. CUOMO                     BRUCE J. BOIVIN, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

_____

        [1]The docket of this case incorrectly lists the spelling as "Bear<u>e</u>r."  Both the amended complaint and this defendant's declaration list the correct spelling as "Bear<u>o</u>r."  <u>See</u> Am. Compl. (Docket No. 30), Bearor Decl. (Docket No. 58-4).  The Clerk is directed to correct the docket to reflect the correct spelling.

        [2] Defendant John Doe was named in the original complaint but not in the amended complaint.  <u>See</u> Docket Nos. 1, 30.  has been excluded from the present complaint.  Am. Compl. at 1.  An amended complaint generally supersedes the original rendering the original null and void.  <u>Pacific Bell Tel. Co. v. Linkline Communications</u>, 129 S. Ct. 1109, 1123 n. 4 (2009); <u>Vadas v. United States</u>, 527 F.3d 16, 22 n.4 (2d Cir. 2007).  Because "John Doe" is no longer a defendant, the Clerk shall amend the docket to note that this defendant has been terminated from the action as of the date of the filing of the amended complaint.

        [3] McDowell was previously incarcerated in the custody of the New York State Department of Correctional Services but was release on or about August 26, 2009.  Docket No. 63.

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Plaintiff pro se Reuben McDowell ("McDowell") brings this action pursuant to 42 U.S.C. §§ 1983 and 1985 alleging that defendants, a New York State Police (NYSP) officer and two  New York State parole officers, violated his constitutional rights under the Fourth and Fourteenth Amendments.  Am. Compl. (Docket No. 30).[4]  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 58.  McDowell opposes the motion.  Docket No. 61.  For the following reasons, defendants' motion is granted.

### I. Background

The facts are related herein in the light most favorable to McDowell as the non-moving party.  See subsection II(A) infra.

### A. The Investigation

On April 25, 2002, McDowell was released on parole from a sentence of imprisonment upon his conviction for robbery.  Docket No. 58-7 at 9; C. McDowell Aff. (Docket No. 30) at 28) ¶ 2.  As relevant to the present case and pursuant to his conditions of release, McDowell was prohibited from acting "in such a manner as to violate the provisions of any law to which [he is] subject . . . [to] a penalty of imprisonment . . . ." and "us[ing] or

---

[4] The paragraphs in the amended complaint have been numbered in a confusing manner.  Therefore, all references to the amended complaint will be only to page numbers.

possess[ing] any controlled substance . . . ."  Docket No. 58-7 at 9.  Upon his release,

defendant Greco, a Parole Officer with the New York State Division of Parole, was

appointed McDowell's parole officer.  Greco Decl. (Docket No. 58-7) ¶ 3; McDowell Dep.

(Docket No. 58-6)[5] at 50.  During his tenure as a parole officer, Greco had meet members

of McDowell's family and knew where McDowell resided from his numerous home visits.

Greco Decl. ¶ 4.

On the morning of March 2, 2006, Greco received a telephone call from Jane

McLaughlin, a woman who identified herself as McDowell's sister-in-law.  Greco Decl. ¶ 5;

Docket No. 58-7 at 14.  McLaughlin reported that McDowell had stolen her mother's ATM

card and used it to make unauthorized withdrawals from her bank account.  Greco Decl. ¶

6; Docket No. 58-7 at 14.  Greco went to McLaughlin's place of employment, Glens Falls

National Bank, to conduct an interview.  Greco Decl. ¶ 7.  McLaughlin reported that through

her employment at the bank, she had access to the records of a joint account with her

parents and that she noticed suspicious activity when she was reviewing her mother's bank

statements.  Id. ¶¶ 8, 10.  McLaughlin identified her parents as Mr. and Mrs. Philio, whom

Greco knew to be McDowell's in-laws because McDowell and his wife resided with them.

Id. ¶ 9; C. McDowell Aff. ¶ 2.  McLaughlin reported withdrawals on February 21 and 24,

2006 for $200 and $300 respectively, which neither she nor her mother had made.  Greco

Decl. ¶ 11.  McLaughlin checked the bank security camera for the days in question and

observed McDowell making the transactions.  Id. ¶ 12.  When McDowell was confronted, he

---

[5] Defendants filed an abridged version of McDowell's deposition transcript.
Therefore, references to pages of that transcript will be to the pages of the docket rather
than to those of the transcript itself.

admitted to taking the money.  Id. ¶ 12.  McLaughlin advised Greco that she wished to press charges against McDowell for the theft of her mother's money.  Id. ¶ 13.

After the interview, Greco spoke by telephone to his supervisor, defendant Lahart, a Senior Parole Officer.  Greco Decl. ¶ 14; Docket No. 58-7 at 14; Lahart Decl. (Docket No. 58-8) ¶¶ 7, 11.  Greco requested that, based on the aforementioned information, a parole warrant be issued for McDowell's arrest for failing to comply with his conditions of release.  Greco Decl.  ¶ 14; Lahart Decl. ¶¶ 7, 13-17.  Part of Lahart's "duties and responsibilities . . . [were] to make the discretionary decision of whether to issue a [parole warrant] . . . following the receipt of information that a parolee was in violation of the conditions of . . . release."  Lahart Decl. ¶ 6.  Lahart concluded that there was probable cause for the warrant based on what he was told by Greco, and issued a warrant.  Greco Decl. ¶ 18; Lahart Decl. ¶¶ 18-19.  This commenced an administrative proceeding to determine whether McDowell's parole should be revoked.  Lahart Decl. ¶ 9.  Greco then went to the NYSP station in Queensbury, New York and requested assistance as there were no other parole officers immediately available.  Greco Decl. ¶¶ 19-20; Bearor Decl. (Docket No. 58-4) ¶ 5.  Police assistance was also required to transport McDowell to a detention facility as Greco's state vehicle was not equipt for the transport.  Greco Decl. ¶ 21.


**B. The Arrest**

Defendant Bearor, an NYSP Investigator, was assigned to investigate the criminal charges requested by McLaughlin as well as to assist in McDowell's arrest.  Greco Decl. ¶ 22; Bearor Decl. ¶ 6.  Prior to leaving the station, Greco informed Bearor that a parole warrant was issued by Lahart by telephone earlier that morning.  Bearor Decl. ¶ 10.   Bearor

4

and Greco rode together in an unmarked car to McDowell's residence.  Greco Decl. ¶ 24;

Docket No. 58-7 at 14.  Once at the residence, Greco knocked on the door and was told to

enter by an unidentified white male.  Greco Decl. ¶¶ 25-26; Bearor Decl. ¶¶ 12-13; C.

McDowell Aff. ¶ 5 (explaining that a local contractor was the individual who answered the

door and allowed defendants to enter the residence); McDowell Dep. at 42-43 (same).

Greco asked the man if McDowell was home, was told that he was and was directed

upstairs.  Greco Decl. ¶ 27; Bearor Decl. ¶ 14.  Greco and Bearor entered the home,

climbed the stairs, and found McDowell watching television in his bedroom.  Greco Decl. ¶¶

28-29; Bearor Decl. ¶¶ 15, 17.  McDowell was arrested, and handcuffed.  Greco Decl. ¶ 30;

Bearor Decl. ¶ 18.

McDowell was escorted to defendants' vehicle where he was advised of his

constitutional warnings by Bearor.  Greco Decl. ¶ 31; Bearor Decl. ¶ 19.  While driving to

the Queensbury Police Station, Greco asked McDowell why he stole the ATM card and

McDowell replied that while he did take the money, the reason was "too deep" for others to

understand.  Greco Decl. ¶¶ 32-33; Docket No.. 58-7 at 14; Bearor Decl. ¶¶ 21-22.

McDowell admitted stealing $700-$800 from his in-laws.  Greco Decl. ¶ 35; Docket No. 58-7

at 14; Bearor Decl. ¶ 24.  McDowell stated, however, that he did not view the transactions

as larceny as he fully intended to reimburse his in-laws.  Greco Decl. ¶ 37; Docket No. 58-7

at 14; Bearor Decl. ¶ 27.  Bearor asked McDowell if he wished to make a statement, but

McDowell declined as he had already made amends to his family.  Greco Decl. ¶ 38; Bearor

Decl.  ¶ 28.

At the Queensbury Police Station, Greco requested that McDowell provide him with a

urine sample, which tested positive for cocaine.  Greco Decl. ¶ 39; Bearor Decl. ¶ 29.  After

the intake procedures were completed, Greco provided Bearor with a conformed copy of the parole warrant and requested that Bearor transport McDowell to the Warren County Correctional Facility.  Greco Decl. ¶ 40; Docket No. 30 at 29; Docket No. 58-7 at 12; Bearor Decl. ¶ 30.[6]  Bearor was again asked to transport McDowell as Greco did not have a suitable vehicle for transporting a prisoner.  Greco Decl. ¶ 44.

### C, The Post-Arrest Proceedings

Greco then returned to McDowell's home to confer with McDowell's wife and in-laws and to request their testimony at McDowell's preliminary violation hearing the following week.  Greco Decl. ¶ 45.  Greco also completed a report which was sent to Lahart.  Greco Decl. ¶ 47; Docket Nos. 30 at 35, 58-7 at 16-17, 58-8 at 12-13 (stating that withdrawing money from his mother-in-law's bank account without permission on February 21 and 24, 2006 violated his conditions of release as did his positive urine test for cocaine); Lahart Decl. ¶ 31[7].  On March 3, 2006, the certified copy of the parole warrant was filed by Lahart

---

[6] Defendants explain that:

> Where time and distance make it impractical for the Parole Officer to acquire a certified copy of the original warrant, the Division of Parole . . . Manual provides that a "conformed copy" of the warrant be provided to the detention facility in which the parolee is held while awaiting the outcome of his parole revocation hearing; a conformed copy of a warrant is good for two business days.

Greco Decl. ¶ 41; see also Lahart Decl. ¶¶ 26-27.  Greco worked in Glens Falls and his supervisor, Lahart, worked in Plattsburgh, a distance of approximately 112 miles.  Greco Decl. ¶ 42.

[7] Lahart co-signed the report on March 15, 2006.  Lahart Decl. ¶ 35.  On May 21, 2006, Lahart recommended that the only other plausible alternative to incarceration was additional drug rehabilitation.  Lahart Decl. ¶ 36;  Docket No. 58-8 at 17.

which attested that the certified copy was authentic.  Docket Nos. 30 at 30, 58-8 at 10; Lahart Decl. ¶ 29.

On March 3, 2006, McDowell was subsequently served with the report notifying him of the charges he faced for violation of his parole and a preliminary hearing scheduled for March 10, 2006.  Greco Decl. ¶ 49; Docket No. 58-7 at 19.  On the day of the hearing, McDowell waived his right to the hearing on advice of counsel.  Greco Decl. ¶ 51; Docket Nos. 58-7 at 21, 58-8 at 15.  Also on advice of counsel, McDowell chose to postpone his final revocation hearing pending the resolution of the criminal charges being investigated by Bearor.  Greco Decl. ¶¶ 53-54.

Bearor's investigation included interviews with, and documents from, Jane McLaughlin and her parents, Marion and Richard Philo.  Bearor Decl.  ¶¶ 31, 32.[8]  On March 15, 2006, Bearor completed two informations, charging McDowell with two counts of grand larceny, one count of theft of an ATM card, and one count of theft from Marion Philo's bank account. Bearor Decl. ¶ 35.  On March 17, 2006, Bearor met with the district attorney concerning the charges.  Id. at ¶ 36.  On March 23, 2006, Bearor presented the informations to the court. Id. at ¶ 37.  Bearor did not re-arrest McDowell because he was already in custody but deemed March 23, 2006, the date criminal charges were filed, as the arrest date in his report.  Id. at ¶¶ 38, 50.  On March 24, 2006, the court issued an order to produce

---

[8] Included in Bearor's investigative attachments are (1) a fax cover page from McLaughlin and attached bank records (Docket No. 58-4 at 9, 12-13), (2) an affidavit from Marion Philo stating that she had not consented to various ATM withdrawals from her account (id. at 10), (3) a request for a new ATM card because the previous card has been reported stolen (id. at 14), and (4) signed statements from McLaughlin and the Philos outlining the chain of events which aroused suspicions that McDowell had stolen the money and his eventual admission of guilt (id. at 26-29).

McDowell for an arraignment, on March 27, 2006.  Id. at ¶ 39; Docket Nos. 30 at 32, 58-4 at

16.  McDowell was arraigned before the Queensbury Town Justice and remanded to

custody.  Bearor Decl. ¶¶ 41-43; Docket Nos. 30 at 33, 58-4 at 18.  The following day,

Bearor submitted his report which included copies of the arrest report[9] and supporting

depositions from McLaughlin and the Philos.  Bearor Decl. ¶ 45; Docket Nos. 58-4 at 20-29,

61-2 at 47-54.

During his incarceration, McDowell was involved in an altercation with another inmate

which resulted in an additional felony conviction for possession of a weapon.  Greco Decl. ¶

55; Docket Nos. 58-7 at 23, 58-8 at 18, 61-2 at 56.  The final parole revocation hearing was

then canceled in light of McDowell's felony conviction as that conviction sufficed to revoke

McDowell's parole.  Greco Decl. ¶ 57.  McDowell was remanded to state custody where he

remained until recently.  See note 3 supra; see also Greco Decl. ¶ 59; Docket No. 58-7 at

26.


## II. Discussion

In his amended complaint, McDowell has alleged that defendants violated his (1) Fourth

Amendment rights by securing the parole warrant improperly and performing an

unauthorized search of the Philos' home; (2) Fourteenth Amendment rights by taking him to

the Queensbury Police Station improperly, failing to follow their own procedures for the

issuance and execution of a parole warrant, and violating his rights to equal protection of

---

[9] The arrest report is dated March 2, 2006 and pertains to the charges in
connection with McDowell's parole violation and not the criminal charges.  Bearor Decl. ¶¶
47, 49.  The report identifies Bearor and another NYSP officer, not a party here, as the
arresting officers as they assisted in McDowell's arrest.  Id. at ¶ 49.

the law; and (3) engaging in a conspiracy to have him arrested and incarcerated. Defendants contend that (1) Lahart is entitled to absolute immunity, (2) McDowell's constitutional and conspiracy claims are meritless, and (3) they are entitled to qualified immunity.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Absolute Immunity

"Parole officers . . . receive absolute immunity for their actions in initiating parole revocation proceedings . . . because such acts are prosecutorial in nature."  Scotto v. Almenas, 143 F.3d 105, 112 (2d Cir. 1998) (citing cases).  New York state regulations allow a supervising parole officer the discretion to issue a warrant for violations of conditions of parole which begins the administrative process, including preliminary and final revocation hearings.  Scotto, 143 F.3d at 112 (citing N.Y. Comp. Codes R. & Regs.,  t. 9, §§ 8004.2-3). As a supervising parole officer, Lahart is entitled to absolute immunity from civil damages because his "discretionary decision to sign the arrest warrant based upon [the . . . parol officer's] recommendation initiated the parole revocation proceedings and was prosecutorial in nature."  Id. at 113 (citations omitted).

Accordingly, defendants' motion is granted on this ground as to Lahart.

10

**C. Fourth Amendment**

The Fourth Amendment protects the rights of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  Searches and seizures may be conducted if there exists probable cause to believe that a crime has been committed and that evidence of that crime is present on the person or premises to be searched.  Id.

McDowell's status as a parolee afforded him a diminished expectation of privacy. See Samson v. California, 547 U.S. 843, 852 (2006) ("[P]arolees . . . have severely diminished expectations of privacy by virtue of their status alone."); United States v. Massey, 461 F.3d 177, 179 (2d Cir. 2006) ("A parolee's reasonable expectations of privacy are less than those of ordinary citizens, and are even less so where, as here, the parolee, as a condition of being released from prison, has expressly consented to having his residence searched by his parole officer.") (internal quotation marks and citations omitted); United States v. Pabon, 603 F. Supp. 2d 406, 415 (N.D.N.Y. 2009) (same).  Additionally, where "a parolee is charged with violating his parole conditions and a warrant for his arrest has been issued, the parolee is removed one step farther from the constitutional protection enjoyed by ordinary citizens."  Pabon, 603 F. Supp. 2d at 415 (internal quotations and citations omitted).

11

**1. Probable Cause**[10]

The probable cause requirement for a parole warrant is satisfied where a parole officer

demonstrates the existence of evidence sufficient to establish probable cause to believe

that the parolee violated a condition of his or her parole.  See United States v. Basso, 632

F.2d 1007, 1013 & n.9 (2d Cir. 1980) ("[T]he probable cause necessary to make a warrant

valid in parole cases could be established merely by a presentation of satisfactory evidence

that a person had violated the conditions of his release, a standard looser than that required

to satisfy the probabl cause requirements for a criminal warrant."); see also Morrissey v.

Brewer, 408 U.S. 471, 487 (1972) (holding that requirement of probable cause for a parole

warrant is satisfied by a showing that the parolee committed acts constituting a violation of

parole conditions). "Probable cause requires an officer to have knowledge or reasonably

trustworthy information sufficient to warrant a person of reasonable caution in the belief that

an offense has been committed by the person to be arrested."  Panetta v. Crowley, 460

F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).  Additionally,

due to the fluidity of the concept, courts are instructed to consider the "totality of the

circumstances" in making any probable cause determination.  Id. (citations omitted).

In this case, McDowell has conceded that probable cause existed to issue the parole

warrant.  McDowell Dep. at 29-30.  McDowell's concessions are supported by the record

---

[10] Issuance of a parole warrant is administrative in nature.  United States ex re. Randazzo v. Follette, 418 F.2d 1319, 1322 (2d Cir. 1969).  As such, the procedure behind issuance is not cognizable on federal review.  See generally Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990) ("The fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action does not settle what protection the federal due process clause requires.") (internal quotation marks and citations omitted); Dixon, 224 F. Supp. 2d at 744-45.

which demonstrates that Greco was advised by McLaughlin, that McDowell had stolen

Philio's ATM card and made unauthorized withdrawals, a statement that was confirmed to

Greco by the Philos and by bank records.  Greco Decl. ¶¶ 5-12.  McDowell had a

documented history of drug abuse, which provided as credible motive for the thefts.  Id.  at

¶ 34.  Therefore, a reasonable person would believe that McDowell had engaged in criminal

activity and there was probable cause to issue the parole warrant.  Additionally, because

probable cause existed, any claims for false arrest and imprisonment are meritless.  See

Bonide Prods., Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir.2000) ("To prove a § 1983 or state

law claim of malicious prosecution, [a plaintiff] must establish [inter alia] ... that there was no

probable cause for the criminal proceeding; ..."); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.

1996) ("The existence of probable cause to arrest constitutes justification and is a complete

defense to an action for false arrest, whether that action is brought under state law or under

§ 1983." (quotation marks and citation omitted)); Zanghi v. Inc. Vill. of Old Brookville, 752

F.2d 42, 45 (2d Cir.1985) ("It is abundantly clear that a finding of probable cause will defeat

state tort claims for false arrest, false imprisonment and malicious prosecution.").  Thus, we

do not reach the issues with respect to the other elements of these claims.

    To the extent that McDowell claims that despite the probable cause supporting the

warrant, it was invalid because it was issued telephonically, such claims must fail.  See

United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977) (finding that the Constitution "is

sufficiently flexible to account for . . . technological advances," including providing a proper

oath or affirmation in support of a search warrant via the telephone) (citations omitted).  The

governing policy allowed, conformed copies of telephonically authorized warrants in

circumstances where time and distance made the traditional method of procuring a warrant

impracticable.  Greco Decl. ¶ 41; Lahart Decl. ¶¶ 26-27.  Such parole warrants, "for retaking

and temporary detention may issue when there is reasonable cause to believe that the

releasee has lapsed into criminal ways . . . ."  N.Y. Comp. Codes R. & Regs. t. 9, §

8004.2(c).  As discussed above, the telephone conference between Greco and Lahart

clearly provided Lahart with such information to make a decision to issue a warrant for

McDowell's retaking and detention.  Defendants followed the requirements of their internal

policy and the requirements of the Fourth Amendment.

Accordingly, defendants' motion is granted on this ground.


## 2. Unlawful Entry

To the extent that McDowell claims that Greco and Bearor entered the Philio house

unlawfully, such claims are meritless.  First, pursuant to state regulations, McDowell had

previously consented to have his residence searched[11] and had listed the Philo house as

his residence.  Pabon, 603 F. Supp. at 412 (holding that searches and seizures may be

conducted in the absence of a warrant if consent is given) (citations omitted).   Second, to

the extent that McDowell claims that Greco and Bearor improperly entered a third-party

residence without appropriate consent to search for McDowell, such contentions are also

meritless as McDowell had no standing to assert the constitutional rights of other persons.

Id. at 417 ("Therefore, regardless of whether [McDowell] was living in [Phillo's house], an

overnight guest, or merely there temporarily, he did not have an expectation of privacy in

---

[11] Pursuant to state law, McDowell "is subject to warrantless and suspicionless searches because he has submitted to this condition in accordance with New York State Parole Regulations."  Pabon, 603 F. Supp. 2d. at 415 n.2 (citing N.Y. Comp. Codes R. & Regs. T. 9, § 8003.2(d))

[the house] that society would recognize as legitimate.  His arrest was thus valid . . . .").

Furthermore, to the extent that the additional presence of Bearor is asserted as a Fourth

Amendment violation, "[t]he presence of the police for the . . . arrest does not alter the

Court's analysis . . . [as] a parole officer may be assisted by police in affecting the search

since their duties and responsibilities are frequently intertwined." Id. at 416 n.3 (citations

omitted).

Thus, defendants' motions as to these claims must also be granted.


### D. Fourteenth Amendment

McDowell's complaint alleges violations of his due process rights for failure of

defendants to comply with state procedures and detaining and transporting him to the

Queensbury Police Department instead of the Warren County Correctional Facility.

Additionally, liberally construing McDowell's amended complaint, he appears to allege that

he has not received the appropriate process due him throughout his parole revocation

hearings and that the advice of his legal counsel was ineffective.

### 1. Questioning[12] and Temporary Detention at the Queensbury Police Department

New York State does not designate specific prisons for individuals charged with parole

violations.  Instead, such violators are held at local facilities until the violation is adjudicated.

See N.Y. Exec. Law § 259-i (3)(b) ("A person . . . taken into custody . . . for violation of one

or more conditions of . . . parole . . . shall, insofar as practicable, be incarcerated in the

county or city in which the arrest occurred.") (emphasis added).  Holding a parolee on a

parole warrant does not give rise to a constitutional violation because the parolee is not a

free citizen, but guaranteed conditional liberty only to the extent that he or she is willing to

completely comply with the conditions of release.  Morrissey v. Brewer, 408 U.S. 471, 478-

80 (1972) (holding that "enforcement leverage . . . derives from the authority to return the

parolee to prison to serve out the balance of his sentence if he fails to abide by the rules.");

see also United States ex rel. Brown v. New York State Bd. of Parole, 301 F. Supp. 1232,

1233 (E.D.N.Y. 1969) ("Although a parolee is permitted outside of the prison walls, he

remains subject to the custody of the warden of the prison from which he has been paroled

. . . .").  Moreover, it is also well established that a prisoner has no constitutional right to

transfer or to housing in a facility of his or her choosing.  Moody v. Daggett, 429 U.S. 78, 88

---

[12] McDowell contends that the questioning which he underwent violated his rights even though it is undisputed that he was advised of his constitutional rights because he was compelled to answer questions by Greco.  Under Miranda v. Arizona, 384 U.S. 436 (1966), statements made by a suspect in custody are inadmissible at trial if the proper warnings were not previously given.  First, the admissibility of these statements would be an issue at the criminal trial and is irrelevant here as there was already sufficient evidence to issue a parole warrant prior to his confession.  Second, McDowell's submissions reveal his knowledge of his rights and his capacity to understand them.  McDowell was plainly advised that he could remain silent and that asserting such right would be appropriate.  However, McDowell voluntarily chose to answer Greco's questions.  Thus, no factual basis exists for McDowell's contentions here.

n.9 (1976).

Therefore, in this case McDowell had no right to be taken to the Warren County

Correctional Facility or to any particular facility.  Furthermore, defendants acted practically

as Bearor was investigating the criminal charges against McDowell, McDowell was arrested

on a parole warrant, and Bearor was responsible for transporting McDowell as Greco lacked

an appropriate vehicle. Greco Decl. ¶¶ 22, 44; Bearor Decl. ¶ 6.  Even McDowell concedes

that it was Bearor's responsibility, and not that of Greco, to investigate the criminal charges

McLaughlin and Philo wished to file.  McDowell Dep. at 35.  Thus, booking and questioning

by Bearor were logical and reasonable events attendant to the arrest.  Taking McDowell

temporarily to the Queensbury Police Department was practical and convenient considering

that McDowell was already in Bearor's vehicle and the station was only minutes away.

Moreover, as a parolee with a limited and conditional liberty interest, McDowell had no

cognizable rights to declare to which facility he should be taken.

Accordingly, defendants' motion is granted on this ground.


### 2. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment

under the law.  Essential to that protection is the guarantee that similarly situated persons

be treated equally.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

(1985).

> [T]he Equal Protection Clause bars the government from selective
> adverse treatment of individuals compared with other similarly
> situated individuals if such selective treatment was based on
> impermissible considerations such as race, religion, intent to inhibit
> or punish the exercise of constitutional rights, or malicious or bad

17

faith intent to injure a person.

<u>Vegas v. Artus</u>, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009) (internal quotation marks and citations omitted).

In the present case, McDowell offers no evidence to support an equal protection claim. He fails to establish how or on what grounds he was treated differently than other similarly situated parolees.  In fact, there is no allegation or assertion of discriminatory animus anywhere in the record.  As such, McDowell's conclusory allegations that his equal protection rights were violated are wholly insufficient to state a claim for relief.

Therefore, defendants' motion is granted on this ground.


### 3. Other Claims

Liberally construing McDowell's claims, he generally contends that his due process rights were violated throughout his revocation proceedings.  First, it is important to distinguish between McDowell's parole revocation proceedings and his criminal proceedings which were being investigated independently but simultaneously.  Second, while it does not appear that any of the state procedural deadlines were violated, violations of state procedures are not cognizable on federal review.[13]  Additionally, McDowell has

---

[13] Federal law requires a preliminary and final revocation hearing wherein at the preliminary hearing the parolee is given notice of the hearing which will take place to determine whether there was probable cause to detain him.  <u>Morrissey</u>, 408 U.S. at 485-87.  McDowell was provided timely notice of the hearing and charges in the violation of release report.  Greco Decl. ¶ 49; Docket No. 58-7 at 19.  McDowell voluntarily waived the hearing.  Greco Decl. ¶ 51; Docket Nos. 58-7 at 21, 58-8 at 15.  Additionally, McDowell stayed his final revocation hearing until his criminal charges were resolved.  Greco Decl. ¶¶ 53-54.  However, his involvement in and subsequent felony conviction for an inmate assault rendered the final revocation hearing moot when the subsequent felony conviction afforded an uncontestable basis for revocation.

contended that the advice of his counsel in the revocation proceedings was ineffective in choosing to waive the preliminary hearing and acquiescing to a stay of the final revocation hearing until the completion of the criminal proceedings.  McDowell Dep. at 29, 32.  These contentions at best involve only McDowell's attorney who was not named as a defendant here.  Moreover, there is no evidence that any of the defendants who have been named had any involvement in rendering legal advice to McDowell.

Accordingly, defendants' motion as to these claims is also granted.[14]


### E. Conspiracy

McDowell alleges that all defendants conspired together to violate his constitutional rights.

"Section 1985 prohibits conspiracies to interfere with civil rights."  Davila v. Secure Pharmacy Plus, 329 F. Supp. 2d 311, 316 (D. Conn. 2004).  To state a claim for relief under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); see also Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007).  To demonstrate that a

---

[14] It is not clear whether McDowell retained his own counsel or counsel was appointed.  If appointed, McDowell is unable to seek redress under § 1983. See Rodriguez v. Weprin, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.") (citations omitted).

19

conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the minds to violate [his or] her civil rights." Salgado v. City of N.Y., No. 00-CV-3667 (RWS), 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted). "In addition, the conspiracy must be motivated by some class-based animus." Iqbal, 490 F.3d at 176 (citations omitted).

Here, McDowell does not assert any facts giving rise to a conspiracy.  First, McDowell vaguely asserts conclusory statements relating to an alleged conspiracy among defendants. This is insufficient.  See X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999). Second, there are no allegations relating to agreements, or even communications, between the  defendants, the purpose of their alleged conspiracy, or an intent by defendants to deprive McDowell of his civil rights.  Finally, as discussed above, none of McDowell's rights were violated.

Accordingly, defendants' motion for summary judgment as to this claim is granted.


**F. Qualified Immunity**

Finally, defendants claim that even if McDowell's constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor

may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning any of McDowell's claims because, for the reasons discussed above, McDowell has failed to raise a question of fact as to the first prong of the inquiry.

Accordingly, in the alternative, defendants' motion is granted on this ground.


### III.  Conclusion

For the reasons stated above, it is hereby **ORDERED** that defendants' motion for summary judgment (Docket No. 58) is **GRANTED** and judgment shall be entered in favor of all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:  September 2, 2009
        Albany, New York                          United States Magistrate Judge

22